Good morning, your honors. May it please the court, I am Robert Freeman. I'm here on behalf of North Las Vegas Police Officer Robinson Reed. This is an interlocutory appeal from the Nevada District Court's denial of qualified immunity to Officer Reed in connection with the civil rights lawsuit filed against him by Lamar Kiles and others. The suit involves the use of deadly force by Officer Reed against Lamar Kiles on August the 13th, 2003. On appeal, Officer Reed contends that the District Court erred both in finding a constitutional violation and in denying him qualified immunity. Central to the District Court's opinion was the finding that Lamar Kiles posed no threat, no risk to Officer Reed and his fellow officers on the night of the shooting. And that finding supported the holding of the District Court that Officer Reed violated the Constitution exercising deadly force and that qualified immunity, having acted as no reasonable officer would. On appeal, we contend that the Court's decision was based primarily on the fact that after the shooting, Lamar Kiles was found to be unarmed. And in this regard, we believe that the decision was based on hindsight. Well, actually, the District Court didn't make a finding. It just, the District Court essentially said there's a genuine issue of material fact and we have to construe the facts at this stage in the light most favorable to the plaintiff. Isn't that what the District Court? Well, I feel that the District Court, obviously, that's the test for qualified immunity under saucier, but I feel it's also, I mean, in terms of just plain routine summary judgment law. I mean, you don't find facts in summary judgment. Well, it's undeniable that Lamar Kiles didn't have a gun, that he was found not to have a gun. But Officer Reed, at the time that he exercised force, thought that he did have a gun. Uh, we, we know that, I know that the Court has to, um, uh, resolve fact issues in favor of the plaintiff. But I think that, that it's incumbent on the Court to, to try to determine whether those facts, the actions of Lamar Kiles at the time and the circumstances that faced Officer Reed justified his use of deadly force. And we contend that it did. What, what I emphasize... To reach your conclusion, don't we have to construe the facts in a light most favorable to the officer? And is that precisely what we can't do at this stage? No, I'm not, I'm not saying that you have to assume that, uh, that Lamar Kiles had a gun or, or, or not. Obviously, he didn't have a gun. Uh, what I'm saying is, is that Officer Reed's belief that he had a gun, uh, is reasonable based upon undisputed facts. The seriousness of the, of the crime call, the situation that he found himself in. You're correct. This is a very dangerous area. They got there, got called there because shots had been fired. They get there and they hear shots fired. And then people are on the ground. He's providing cover. And here comes Kiles and somebody else into an area. The problem I have with your argument is Flori, Flori Stuckey's deposition, who says she could see his hands. There was nothing in his hands. And if you, if you take a look at her facts, I never saw a weapon. Uh, and you were able to see his hands the whole time. Well, not really. I picked them up. There's excuse. So if you take her testimony, why isn't there a disputed fact about this? And you compound that with your client saying it was an accidental shot. Well, what I would say about Officer Stuckey taking that first is that Officer Stuckey clearly had a different perspective on Lamar Kiles than Officer Reed did. Officer Stuckey also testified that from her position, she could see Lamar Kiles coming from between the buildings and had quite a bit more time to observe him and calculate whether he was a risk. Officer Reed, who had his back to that area and was around the corner of the building providing cover to other officers, didn't have the same perspective. Isn't that classic jury argument though? I mean, but if you're evaluating Officer Reed's qualified immunity defense, you have to evaluate what he determined, what he, what his perspective was, just as the officers in the Blanford case got benefit of having their perspectives evaluated by the court. Right, but your client basically does not remember pulling the trigger, right? Well, admittedly, his first reaction to that was that he didn't remember pulling the trigger. We, you know, that's. Well, he said, first of all, he thought, he told Officer Wood that he thought it was an accidental discharge. And then he was interviewed and he said, now I think I must have pulled it automatically. I don't remember pulling the trigger. Why doesn't that give, create enough of a genuine issue of fact to go to a jury on that? Well. Because your theory is he, the victim made a gesture, a threatening gesture, and he justifiably made a decision to shoot, right? Well, I mean, there's no doubt that part and parcel of Officer Reed's decision to shoot was this perceived threatening gesture. And obviously, Lamar Kyle's denies making the threatening gesture. Our contention is that his use of force was justified even without that. And that's based on. You mean a person who's not a suspect in any of the shootings is coming to this area, he's slowing down, according to Stuckey, and you can just shoot him? No, he's slowing. Obviously, he's not a suspect in the shootings. Officer Reed testified he wasn't a suspect in the shootings. That's not why he was shot. So you're arguing that somebody just coming into this area, and granted, it's a dangerous area, police could just shoot him. No. Somebody who is being given commands to stop and go back and doesn't heed those commands, someone who's being given commands to stop and get on the ground and doesn't heed those commands and continues to close the distance, however fast or slow, between himself and an officer who's in this kind of high stress situation. Stuckey says, and you didn't perceive anything about what he did that night to be a threat to you of significant force for you to shoot him, correct? For deadly force? No, I did not. You also didn't see Kyles do anything that would create a substantial risk of bodily injury to anyone else, right? That is correct. And my response to that, Your Honor, is that it wasn't Flory Stuckey who exercised force. Obviously, she didn't feel force was appropriate, but she's not Officer Reed. She has a different perspective than Officer Reed. But doesn't Reed have two stories? Two stories? Two stories, yeah. I shot him because I thought he was a threat, and I don't even know what happened. Well, it's an accident. If it's an accident, then we're not here, because negligence doesn't... Yeah, but that's an if. You see, that's a jury question. What I would say is that these situations are replete with instances where officers act automatically, and they don't have immediate recall of even pulling the triggers on their guns. In this case, given time to reflect, Officer Reed realized that Lamar Kyles was a threat, and that he was acting in response to that threat. Now, admittedly, that was a few minutes after the fact, but that was his testimony during his deposition. And that's a description of the detectives. Well, when he's interviewed by the detectives, he first says he thought that was an accidental discharge. Yes, he did. And then the second thing, he says, now I think I don't remember pulling the trigger, so I must have just been automatically reacting. That's the second story. The third one is, after reflection, I saw something. Well, he was automatically reacting to something, and that something is Lamar Kyles approaching him in this situation, in this gang neighborhood where prior, two different gangs have been shooting each other building to building. Officer Reed gets there, hears shots himself. All of those officers are in fear for their safety. They have to be. Officer Reed feels responsible not only for himself, but for other officers who are on the ground apprehending these suspects. And he reacted to the situation that he saw. Now, Lamar Kyles testified that he intended to do a lot of things that were benign. I intended to go back to my apartment, like the officers told me. I intended to get on the ground, like the officers told me. But we know that the qualified immunity defense evaluation doesn't depend on the intent of the person against whom force was used. It depends upon the observation of the officer who used force. In Blanford, obviously that plaintiff didn't hear the police commands, wasn't trying to break into another house, but the officer's reasonable observations led them to get qualified immunity from this court. And so Lamar Kyles' intent doesn't matter. What I suggest is that whether or not he made a furtive gesture, whether or not his hand dropped to his waist, whether or not he intended to make it appear that he was going to go for a gun, Officer Reed, in this particular situation, had reasonable grounds to do so. May it please the court, my name is E. Brent Brice and I represent the appellee Lamar Kyles in the instant action. I believe from the court's questioning of the appellant, it is clear and we agree that this represents a factual dispute which must be resolved at trial. There are too many factors that are in dispute. What's the factual theory of your case? The factual theory is that first, Officer Reed, upon questioning, stated that there was an accidental discharge. Then upon questioning during his deposition and even later on in that same statement, Justice Trott, he specifically states, I saw, I perceived a threat and that's why I shot. So there is no reasonable mistake. If we go through the qualified immunity analysis, first we have the identification of the right. That's clear here. Is the right clearly established? Over 20 years ago in Tennessee v. Garner. So that gets us to the reasonableness of Officer Reed's conduct. Officer Stuckey that was right next to Reed states, Kyles did nothing to warrant being shot. Appellee's errors at 0156. What's your theory about why the shooting occurred? The theory would be that Officer Reed engaged in excessive force because he overreacted. He did not act reasonably. He did not act in the manner of the other officers that were there acting reasonable. There was at least 10 other officers around and six that were in the general vicinity. None of them shot. None of them perceived a threat. Mr. Kyles was unarmed at the time he rounded the corner. Testimony is that he was slowing down as he rounded the corner. No one saw a gun. All the factors that the U.S. Supreme Court and this court has come up with in Graham and Diorly favored Mr. Kyles in totality. Severity of the crime. Mr. Kyles was not accused of any crime. In their opening brief they state that Mr. Kyles was dressed in like kind. Mr. Kyles had on a white t-shirt commonly called a wife beaters t-shirt and some jeans, shorts. Commonly called wife beaters t-shirt? Yeah, they call them that. I don't know why they call them that in the department stores, but that's what the sleeveless is what they call them. I don't know why, but that's what they do. Anybody have a wife beaters t-shirt? But that's what he had on. He did not have on a shirt. He did not have on a gray over shirt as the suspect had. Indeed all the officers including Officer Reed stated he was not a suspect. He wasn't a suspect, but you must agree this is a dangerous situation. Shots have been fired. That's why the police are there in the middle of the night. Shots are fired when they get there. People are running around all over the place. Reed's job was to provide cover. He was to look specifically for people like your client coming into the area. Your client did not stop when he was told to stop. Well, that's actually a disputed fact. Mr. Kyle states during his deposition that in fact he did stop. That his hands were at his side and he did not move. That's Appley's excerpt 0090. It was also Officer Stuckey's testimony during her deposition that he was slowing down to one constant movement and that there was no, quote, furted move to the waistband. That his hands were down by his side. His girlfriend Luscious also. So your theory is that Reed just shot him because he wasn't completely stopped. Well, I believe he was stopped. I believe Reed shot him because he had imagined in his mind this threat. He had plenty of time for deliberation. He had, by all accounts, by Stuckey's account at Appley's excerpts 0155, there was five seconds. Kyle's account, Appley's excerpts 0090, there was five seconds. Luscious's account at Appley's excerpts 0117, five seconds. Officer Reed said five seconds and then three and a half. But if we assume the three and a half, we have 1001, 1002, 1003, bang. There are many convicted felons that are in the prison system for having that amount of time to deliberate and premeditate before killing someone. There was ample time. Officer Stuckey also testified that they're trained to make split second decisions. That's at Appley's excerpt 0135. They also went through FATS training, which is firearms training simulator. And that's found at Appley's excerpt 0132, where they are specifically taken through a series of stimuli to determine whether they're going to shoot or not shoot. They're graded. It tells you what kind of shot you made, whether it was a death shot and whether it was appropriate to use force. So this officer is trained to make split second decisions. And instead of acting on his training, he acted, in our opinion, due to basically incompetence and shot our client intentionally. And he made it clear it was intentionally when he changed his to an imminent threat. And that's why he had to shoot. No one there saw a weapon in Kyle's hands. The district court's order, which is found at EOR 0417 through 0420, is clear that it's not based upon hindsight. The court is focusing on the factors that everyone saw. They saw no gun. They saw no imminent threat. Mr. Kyle's was making it's amazing they saw anything because if you read about the lighting, there wasn't enough lighting. Mostly they're talking about seeing outlines of people. Well, officer story excuse me, Detective Stucky now actually talks about when they were running through the two buildings that she could see very well and that the only thing that she saw was a movement of running. That would be at Appalee's Excerpt 0158. She continues to say that she saw Kyle slowing down, Appalee's Excerpt 0157, and didn't see anything she would shoot at, Appalee's Excerpt 0158. So officer Stucky did see Kyle's. There was one area where Kyle's moved at the very end, which placed him in more of a shadowy figure than where he had been previously. But still, both officers testified that you cannot lawfully shoot at an outline. You have to have a perception of a threat either to yourself or others. And I is when he talks about that he thinks that the waistband, here it is, it's possible that people may have a weapon concealed in a waistband. Possible. Might have. That's not the standard for shooting people. In Diorly, this court has made it crystalline that a simple statement by an officer that he is in fear or perceives a threat is not good enough. The use of force must be based on, deadly force must be based on objective factors. Because if we do not do that, then we have lots of dead people on the sidewalks. You can't shoot at what you might see or what you think might be there unless it's reasonable. And in this context, it was not reasonable because other officers responding to the scene did not perceive a threat. And they were right next to Officer Reed. And additionally, Officer Reed cannot articulate his justification for using deadly force when questioned. I think we have your argument at hand, unless there are further questions. Thank you, Justices. Thank you for the promotion. We're only judges. The only justices in the federal system are in Washington. Thank you, Your Honor. I'm going to use my 42 seconds, Your Honors, to emphasize the fact that I don't think it's fair to impute Officer Stuckey's knowledge and observations to Officer Reed in the circumstance. But we're talking about objective facts, aren't we? Not subjective. But objective facts from the officer who used deadly force's perspective. I mean, it's not fair to say, okay, he knew what she knew, even though she's 20 feet over this way and was facing the direction that Lamar Kyles was coming and had quite a bit more time to look at him and judge whether he was going to be a threat or not. Counsel, I'm kind of comfortable. These sound like arguments I hear in my day job. I understand that, Your Honor. The other response that I would say is that what's your factual theory of defense? It was an accident or he perceived a threat and shot him under different circumstances. My theory is that he shot him under intentionally shot Mr. Kyles under stressful circumstances as Officer Reed testified in his deposition. Okay. Thank you for your argument. Thank you. The case is sure to be submitted. What's our status on the? Do we have? All right. Well, we'll proceed with the argument in the next case and then we'll see where that do you miss it? I'm sure I mispronounced both those names, but you will correct me doubtless.
judges: Trott, Thomas, Hogan